Michael R. Mushkin (Nevada State Bar #: 2421)
Michael R. Mushkin & Associates, P.C.
4475 South Pecos Road
Las Vegas, NV 89121
PH: (702) 386-3999
FX: (702) 454-3333
Email: michael@mushlaw.com

*Attorney for Plaintiff*
*KPI Bridge Oil, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KPI Bridge Oil, Inc., | IN ADMIRALTY |
| Plaintiff, | CASE NO.: |
| v. | |
| WILMINGTON TRUST COMPANY; TERAS CARGO TRANSPORT (AMERICA) LLC; TERAS BREAKBULK OCEAN NAVIGATION ENTERPRISES LLC; TRUENORTH TRANSPORT LLC, | **VERIFIED COMPLAINT** |
| Defendants. | |

**NOW COMES** Plaintiff, KPI Bridge Oil, Inc. (hereinafter "KPI" or "Plaintiff"), by and through its undersigned counsel, and files this Verified Complaint against the Defendants WILMINGTON TRUST COMPANY (hereinafter "Wilmington Trust"), TERAS CARGO TRANSPORT (AMERICA) LLC (hereinafter "Teras"), TERAS BREAKBULK OCEAN NAVIGATION ENTERPRISES, LLC (hereinafter "Breakbulk") and TRUENORTH TRANSPORT LLC (hereinafter "Truenorth") (hereinafter collectively "Defendants") alleges and pleads as follows:

## I.   JURISDICTION AND VENUE

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract

Chalos & Co Ref: 2422.005

for the supply of various fuel and lubricants to the vessel M/V NORFOLK, IMO 9418975 (hereinafter "the Vessel"). This case falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought under the provisions of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter "Supplemental Rules").

2. The jurisdiction of this Honorable Court is founded on the presence within the District of property of Defendants that may be attached by process of maritime attachment and garnishment under the proviso of Supplemental Rule B as pled in Section IV of this Verified Complaint.

## II.   THE PARTIES

3. At all times material hereto, Plaintiff, KPI, was and is a corporation with a principal place of business in Red Bank, New Jersey, which is engaged in the business of providing maritime necessaries to ships, namely bunkers.

4. Defendant Wilmington Trust is a corporation organized under the laws of Delaware, with its principal place of business in Wilmington, Delaware. Wilmington Trust, as trustee of the HHL LISBON TRUST, is the registered owner of the Vessel.

5. Defendant Teras is a corporation organized under the laws of Delaware, with its principal place of business in Gig Harbor, Washington. Teras is the charterer of the Vessel.

6. Defendant Truenorth is a corporation organized under the laws of Iowa, with its principal place of business in Cedar Rapids, Iowa. Truenorth is the beneficial owner of the Vessel and acts as its commercial manager.

7. Defendant Breakbulk is a corporation organized under the laws of Delaware, with its principal place of business in Vienna, Virginia. Breakbulk is an affiliate of Teras who assists in operating the Vessel.

## III.   THE SUBSTANTIVE CLAIM

### A.   KPI's Contracts for Delivery of Bunkers

Chalos & Co Ref: 2422.005

8. KPI was the supplier of bunkers to the M/V NORFOLK pursuant to maritime contract dated September 15, 2016. KPI brings this action in order to recover amounts indisputably due and owing for the supply of bunkers to the Vessel. A copy of the Confirmation of Order is attached hereto as **Exhibit 1**.

9. The Confirmation of Order incorporates KPI's Terms and Conditions of sale for marine bunkers. *Id*. A copy of KPI's Terms and Conditions of 2015 is attached hereto as **Exhibit 2**.

10. The agreement for the supply of bunkers to the Vessel was entered into by Teras for and on behalf of the Vessel. The agreement was for the account of "M/V Norfolk and/or master and/or owners and/or charterers and/or managers and/or operators and/or HHL LISBON TRUST and/or Teras Cargo Transport (America) LLC and/or Teras Cargo Transport Pte Ltd" and called for Plaintiff to provide bunkers at a rate of USD 299.00 per MT of IFO-380cst and USD 519.00 per MT of MGO. *See* **Exhibit 1.**

11. KPI timely delivered the bunkers for the contract to the Vessel at the port of Valencia, Spain, on or about September 16, 2016, as set out in the bunker delivery receipt (attached hereto as **Exhibits 3**). The Bunker Delivery Receipt bears the signature of the Master or Chief Engineer and bear the Seal of Vessel. *Id*.

12. By signing the Bunker Delivery Receipt, the Master or Chief Engineer acted on behalf of the Vessel and her owner and/or operator and/or charterers to procure bunkers, and thereby accepted them, for the Vessel.

13. The said bunkers delivered to the Vessel were necessary to the accomplishment of her mission; to wit: trade worldwide as a commercial ship.

14. The owners and charterers received the benefit of such services and are indebted to Plaintiff and obligated to pay for the aforementioned goods and services. An invoice numbered 29298 for the bunker delivery was issued on September 21, 2016 to the

Chalos & Co Ref: 2422.005

Vessel and/or her Owners for the amount totaling USD 183,545.00. A copy of the invoice is attached hereto as **Exhibit 4**.

15.     Despite the clear and unambiguous October 16, 2016, due date on the invoice, no payment has been received. In breach of the bunker supply agreement, Owners wrongfully refused, neglected, and/or otherwise failed to timely pay the amount indisputably owed totaling USD 183,545.00.

16.     Pursuant to Clause 8.4 of KPI's Terms and Conditions (*see* **Exhibit 2**, p. 4), incorporated by reference into the bunker sales contract (*see* **Exhibit 1**), any delay in payment of the full sum due shall cause a service charge interest to "accrue to Seller[1] at the rate of three (3) percent per month, compounded monthly, from the date payment was due to the date of payment". To date, the interest accrued is USD 9,727.89.

17.     Pursuant to Clause 15.1 of KPI's Terms and Conditions, "[t]he Buyer[2] agrees to pay any and all expenses, legal fees, and court costs incurred by the Seller to collect and obtain payment of any amount due to the Seller". *See* **Exhibit 2**, p. 8.  To date, costs have been incurred in connection with the collection of this overdue amount and are presently estimated to be in an amount of no less than USD 10,000.00. Further, under clause 15.1 of the specific terms and conditions governing the contract for the sale and supply of bunkers to the NORFOLK, the Vessel is liable to indemnify the Plaintiff for any and all damages and/or costs suffered or otherwise incurred by the Seller due to a breach of the contract.

18.     Accordingly, the total amount due and owing to KPI as a result of the bunker delivery to the Vessel is USD 193,272.89, plus costs, fees, and interest.

---

[1] "Seller" is defined in KPI's Terms and Conditions as "KPI BRIDGE OIL INC, 21 East Front Street, Red Bank, NJ 07701, United States of America" *See* Exhibit 2, Clause 1.1.

[2] Under KPI's Terms and Conditions, "Buyer" is defined to include, inter alia, the Vessel supplied and, jointly and severally, her master, owners, operators, charterers, and "any party benefitting from consuming the Bunker Fuel, and any other party ordering the Bunker Fuel." *See* Exhibit 2, Clause 1.1.

Chalos & Co Ref: 2422.005

19. The Vessel received the benefit of the services provided by Plaintiff and is indebted to Plaintiff KPI, and is obligated to pay for the aforementioned goods and services.

20. Under Clause 9.1 and 20.1 of the Terms and Conditions governing the contract for the sale of bunkers to the Vessel (*see* **Exhibit 2**, p. 5 and 8), the laws of the United States are applicable at Plaintiff's option for the purpose of enforcing a maritime lien and securing payment of the amounts due and owing to the Plaintiff. Accordingly, Plaintiff may and does now seek enforcement of a maritime lien for the supply of necessaries, *i.e.* bunker fuel, under the provisions of 46 U.S.C. §§ 31341 *et seq.*

    **B.**    **Unimarine's Contracts for Delivery of Bunkers**

21. In addition, Plaintiff KPI has been assigned all rights and interests in payment on bunkers supplied by Unimarine LLC and its wholly-owned subsidiary, Unimarine Ltd. Pte., (hereinafter "Unimarine") to the M/V NORFOLK.[3]

22. Unimarine was the supplier of bunkers to the M/V NORFOLK pursuant to maritime contracts dated June 24, 2016 and August 9, 2016. KPI brings this action in order to recover amounts indisputably due and owing for the supply of bunkers to the Vessel. Copies of the Confirmations of Order is attached hereto as **Exhibit 5**.

23. The Confirmations of Order incorporate Unimarine's Terms and Conditions of sale for marine bunkers. *Id.* A copy of Unimarine's Terms and Conditions of 2015 is attached hereto as **Exhibit 6**.

24. The agreements for the supply of bunkers to the Vessel were entered into by Teras Cargo Transport (America), LLC, for and on behalf of the Vessel. The agreements were for the account of "M/V Norfolk and/or master and/or owners and/or charterers and/or

---

[3] Rights, remedies, and claims can be freely assigned, including rights to enforce liens and rights to payment. Turner v. Neptune Towing & Recovery, Inc., 2011 U.S. Dist. LEXIS 108882, *33-34 (M.D. Fla. Sep. 21, 2011). Assignment of such rights does not require consideration, so Unimarine may freely assign their lienor rights to KPI without any payment being necessary. Galehead, Inc. v. M/V Fratzis M., 8 Fla. L. Weekly Fed. D 212, 5 (U.S. S.D. Fla. 1994).

Chalos & Co Ref: 2422.005

1  managers and/or operators and/or Teras Cargo Transport (America) LLC and/or Teras BBC
2  Ocean Navigation Enterprise LLC" and variously called for Plaintiff to provide bunkers at a
3  rate of USD 4.55 per L of Shell Tellus S2 V46, USD 4.12 per L of Shell Omala S2 G100, USD
4  12.14 per L of Shell Corena S4 R68; and USD 1.957 per L of Aurelia TI 4040, respectively.
5  *See* **Exhibit 5**.

6  25. Unimarine timely delivered the bunkers for each of the agreements to the
7  Vessel at the ports of Burgas, Bulgaria, and Valencia, Spain, as set out in the bunker delivery
8  receipts (attached hereto as **Exhibits 7**). The Bunker Delivery Receipts bear the signature of
9  the Master or Chief Engineer and bear the Seal of Vessel. *Id*.

10 26. By signing the Bunker Delivery Receipts, the Master or Chief Engineer acted
11 on behalf of the Vessel and her owner and/or operator and/or charterers to procure bunkers,
12 and thereby accepted them, for the Vessel.

13 27. The said bunkers delivered to the Vessel were necessary to the accomplishment
14 of her mission; to wit: trade worldwide as a commercial ship.

15 28. The Vessel, and her owners, received the benefit of such services and are
16 indebted to Plaintiff and obligated to pay for the aforementioned goods and services. Invoices
17 were promptly issued as follows:

| Invoice Number | Due Date | Amount (USD) |
|---|---|---|
| INV93026 | August 8, 2016 | 11,717.26 |
| INV90207 | September 27, 2016 | 15,656.00 |

21 The invoices were issued to the Vessel and/or her Owners for the amount totaling USD
22 27,373.26. Copies of the invoices are attached hereto as **Exhibit 8**.

23 29. Despite the clear and unambiguous due dates on the invoices, no payment has
24 been received on either of the agreements. In breach of the bunker supply agreement, Owners
25 wrongfully refused, neglected, and/or otherwise failed to timely pay the amount indisputably
26 owed totaling USD 27,373.26.

6

Chalos & Co Ref: 2422.005

30. Pursuant to Clause 11(d) of Unimarine's Terms and Conditions (*see* **Exhibit 6**, p. 3), incorporated by reference into the bunker sales contracts (*see* **Exhibit 5**), any delay in payment of the full sum due shall entitle Unimarine to "interest at the rate of two (2) percent per month". To date, the interest accrued is USD 1,704.49.

31. Pursuant to Clause 11(d) of Unimarine's Terms and Conditions, the Buyer[4] shall pay "any fees, costs and expenses incurred in the debt collection or legal action for recovery". *See* **Exhibit 6**, p. 3. To date, costs have been incurred in connection with the collection of this overdue amount and are presently estimated to be in an amount of no less than USD 10,000.00. Further, under clause 12(d) of the specific terms and conditions governing the contract for the sale and supply of bunkers to the NORFOLK, the Vessel is liable to indemnify the Plaintiff for any and all damages and/or costs suffered or otherwise incurred by the Seller due to a breach of the contract.

32. Accordingly, the total amount due and owing to Unimarine as a result of the bunker delivery to the Vessel is USD 29,077.75, plus costs, fees, and interest.

33. The Vessel received the benefit of the services provided by Unimarine and is indebted to Unimarine, and is obligated to pay for the aforementioned goods and services.

34. Under Clause 16(a) of the Terms and Conditions governing the contract for the sale of bunkers to the Vessel (*see* **Exhibit 6**, p. 4), the laws of the United States are applicable at Unimarine's option for the purpose of enforcing a maritime lien and securing payment of the amounts due and owing to the Plaintiff. Accordingly, Plaintiff may and does now seek enforcement of a maritime lien for the supply of necessaries, *i.e.* bunker fuel, under the provisions of 46 U.S.C. §§ 31341 *et seq*.

---

[4] Under Unimarine's Terms and Conditions, "Buyer" is defined to include, inter alia, the Vessel supplied and, jointly and severally, her master, owners, operators, charterers, and "any party benefitting from consuming the Bunker Fuel, and any other party ordering the Bunker Fuel." *See* Exhibit 6, p. 1.

Chalos & Co Ref: 2422.005

35. Between the KPI and Unimarine bunker deliveries to the Vessel, the total amount due and owing to the Plaintiff on the contracts thus far is USD 222,350.64, plus costs, fees, and interest.

### IV. ALLEGATIONS IN SUPPORT OF SUPPLEMENTAL RULE B ATTACHMEMT

36. Plaintiff KPI repeats and re-alleges all matters alleged in the above and foregoing Verified Complaint, and for its further and additional admiralty *in personam* claims against Defendants, alleges and pleads as follows:

37. All of the Defendants are not present or cannot be found in the District within the meaning of Supplemental Rule B. *See Attorney Declaration of Briton P. Sparkman attached hereto as* **Exhibit 9**. Notwithstanding the above, Defendants have located within the District certain tangible or intangible personal property in the hands of a party who may be named garnishee in the process of maritime attachment and garnishment consisting of debts, credits, or effects including but not limited to amounts owed, due or to become due, accounts, checks, payments held or which may be receivable by said garnishee on behalf of the Defendants.

38. More particularly, Argent Marine Management, Inc., (hereinafter "Argent") is a vessel management company that since May 1, 2016 has been an operator of the Vessel on behalf of Teras and the owners as part of the MARAD MSP. [5] *See Excerpt from Argent's website listing itself as the operator of the M/V Norfolk as part of the MSP attached hereto as* **Exhibit 10**. Argent is located at 889 Adler Avenue, Suite 300, Incline Village, Nevada 89451.

---

[5] The United States Maritime Administration ("MARAD") Maritime Security Program ("MSP") is a government program wherein commercial vessels are contracted to provide additional shipping capacity for the Department of Defense when needed.

Chalos & Co Ref: 2422.005

39. Upon information and belief, Garnishee Argent holds and/or maintains in its possession and within the District of Nevada tangible and/or intangible property belonging to Teras, Breakbulk, Truenorth, and/or Wilmington Trust, all for the benefit of the M/V Norfolk.

40. More specifically, Garnishee Argent holds property on behalf of the Vessel including, but not limited to, funds deposited by Defendants in a bank account to pay operation costs during the period in which Argent is the operator of the vessel. These funds are intended for general use by the Vessel to pay its debts and are amenable to attachment under Supplemental Rule B.

41. According to Clause 15.1 of KPI's Terms and Conditions and Clause 11(d) of Unimarine's Terms and Conditions, Plaintiff may seek prospective costs incurred based on a breach of contract by Defendants. The amount of Plaintiff's claim, as reasonably as it can be estimated, is as follows:

A. Total Amount Due and Owing on Contracts……………………..USD 222,350.64

B. Interest on unpaid sum for one (1) year:

*Calculated at 6% interest, compounded quarterly*………………….. USD 11,327.73

C. Recoverable Legal Fees and Costs………………………………. USD 50,000.00

**Total Claim……………………………………………………… USD 283,678.37**

42. Therefore, Plaintiff's total claim for breach of the maritime contracts against Defendants is in the aggregate sum of **USD 283,678.37**.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays as follows:

A. That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, be issued against Defendants, and Defendants be cited to appear and answer the allegations of this Complaint;

B. That if Defendants cannot be found within this District, then all of their respective property within this district, tangible or intangible, physical property, receivables, debts, credits, or effects including but not limited to: accounts receivable, checks, and any

1  repayments whatsoever and debts matured or unmatured owed by or in the hands or control of
2  persons named as garnishees in the Process of Maritime Attachment and Garnishment be
3  attached and seized pursuant to Supplemental Rule B;

4      C.    That judgment be entered against Defendants in the sum of USD 283,678.37,
5  exclusive of costs and attorney's fees, and the proceeds of the assets attached be applied in
6  satisfaction thereof;

7      D.    That the Court grant such other and further relief as it deems just, equitable and
8  proper.

                                    Respectfully submitted,

Dated: December 12, 2016        Michael R. Mushkin & Associates, P.C.
       Las Vegas, NV

                                 By:    /s/ Michael R. Mushkin
                                         Nevada State Bar number: 2421
                                         4475 South Pecos Road
                                         Las Vegas, NV 89121
                                         PH: (702) 386-3999
                                         FX: (702) 454-3333
                                         Email: michael@mushlaw.com

                                         *Attorney for Plaintiff*
                                         *KPI Bridge Oil, Inc.*

OF COUNSEL
Briton P. Sparkman
(Pro hac vice application forthcoming)
CHALOS & CO, P.C.
7210 Tickner Street
Houston, TX 77055
PH: (713) 574-9582
FX: (866) 702-4577

*Attorneys for Plaintiff*
*KPI Bridge Oil, Inc.*

Chalos & Co Ref: 2422.005